Here the duty rested upon the landlord to make repairs after notification. Further than that, the defendant undertook to make repairs, and, having so undertaken, she was bound to make them with diligence and care. She could do it by making a contract with others to do it. The jury might have found that the first plumber did not exercise diligence and care, for, if he had, he would have discovered the condition which was disclosed to the second plumber when a thorough examination was made, and the cause of the overflow was detected. Blumenthal v. Prescott, 70 App. Div. 565, 75 N. Y. Supp. 710; Brennan v. Ellis, 70 Hun, 472, 24 N. Y. Supp. 426.

It is suggested that the defendant is not liable because of a covenant contained in the lease of the store and basement, and which reads that the plaintiff "at his own cost and expense will make all repairs to the interior of the premises and the appurtenances thereof, during the said term, that may be caused by the party of the second part, or any of his employees, that may be necessary to preserve them in good order and condition, except any repairs that may be necessary in consequence of damage by fire or the leakage of the roof, and that such repairs shall be equal in quality and workmanship to the original work in said building." This stipulation of the lease only refers to repairs necessitated by the acts of the tenant or of his employés.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur, except VAN BRUNT, P. J., who dissents.

---

(87 App. Div. 170.)

### KIRSOP v. MUTUAL LIFE INS. CO.

(Supreme Court, Appellate Division, First Department. October 23, 1903.)

1. INTERPLEADER—ADVERSE CLAIMS—AFFIDAVITS—INFORMATION AND BELIEF.

Where substantially all the material statements in the affidavit of an adverse claimant to a fund due under an insurance policy, which was used on a motion by the insurance company for an interpleader, were on information and belief, and the source of affiant's information was said to be an affidavit filed by claimant's husband with insurer, but not produced, to the effect that an assignment of the policy to plaintiff was for security only, and not absolute, as it appeared on its face, such affidavit was insufficient to authorize an order of interpleader, it being contradicted by a positive affidavit by plaintiff, and by a letter written by insurer to plaintiff, showing the cash surrender value of the policy at the time of the assignment.

2. SAME.

Where, at the time a policy matured, insurer might have properly paid the amount due thereon to the assignee on demand, but, instead, refused payment, and thereafter one of the assignors served it with notice of a claim to such proceeds, insurer was not thereafter entitled to an order of interpleader.

Appeal from Special Term.

Action by George Kirsop, Jr., against the Mutual Life Insurance Company. From an order granting defendant's motion to interplead Mary J. Sweeney as defendant, and that defendant insurance company be discharged on payment of the amount of the policy into court, plaintiff appeals. Reversed.

On or about March 14, 1883, the Mutual Life Insurance Company, in consideration of certain premiums to be paid, issued its policy on the life of one William R. Sweeney, in which, among other things, it was agreed that if both he and Mary J. Sweeney, his wife, were living on March 14, 1903, the company would then pay to Mary J. Sweeney the sum of $2,500. Both survived the date named. Prior thereto, and on May 1, 1893, the wife had executed a written assignment, absolute in form, transferring to the plaintiff herein, for value, all her right, title, and interest to the moneys which might thereafter become due under the policy, which assignment was assented to in writing by her husband. William R. Sweeney, also, by a writing executed on the same day, assigned all his right, title, and interest in and to the policy to the plaintiff, and to this assignment his wife assented; and these assignments and consents were filed in the office of the defendant, and thereafter the premiums were paid by the plaintiff, until the due date of the policy, which, as stated, was March 14, 1903. The husband and wife being then alive, and the money, under the policy, then due, the plaintiff made a demand on the company for payment, which was refused; and thereafter he commenced this action, and served the complaint on the company, April 3, 1903. On April 15, 1903, the company received a notice from Mary J. Sweeney, the wife, claiming that the assignment of the policy was made to the plaintiff under an agreement that the policy was to be collateral security for the payment of an indebtedness which her husband owed to the plaintiff, and for money loaned to him at the time of the execution of the assignment, and all sums of money which the plaintiff should thereafter pay as premiums on the policy; and, as near as she could estimate, she had an equity left in the policy to the amount of about $400. On receipt of this notice from Mrs. Sweeney, the company made a motion for the substitution of the Sweeneys as defendants in its place and stead, and this motion, coming on to be heard, was granted, to the extent of substituting Mary J. Sweeney as party defendant, and directing that, on payment of the money due on the policy into court, the company should be discharged. From this order the plaintiff appeals.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Benjamin E. De Groot, for appellant.
Julien T. Davies, for respondent.
Thomas J. Mooney, for intervener.

O'BRIEN, J. Substantially all the material statements in the affidavit of Mrs. Sweeney used upon the motion are upon information and belief, and the source of her information is said to be another affidavit which was filed by her husband with the defendant company, but which is not produced. We have nothing, therefore, in the record, beyond the statements of Mary J. Sweeney, on information and belief, that the assignment to the plaintiff was by way of pledge, as against the plaintiff's positive statement to the contrary, and a letter showing the cash surrender value of the policy at the time when the assignment was made, written to Mr. Sweeney by the company, which letter to some extent supports the plaintiff's contention that the assignment was absolute in fact, as it concededly is in form. Apart, however, from this infirmity in the respondent's papers used upon the motion, a feature is here presented which we think should have resulted in a denial of the motion. We have called attention to the date of maturity, showing that on March 14, 1903, when the policy became due, and a demand for its payment was made by the plaintiff, the company, without any risk or hazard, could have paid

over the amount thereof to the plaintiff. Instead, however, of complying with the obligation which was implied of making the payment promptly, it delayed until, on April 15, 1903, the Sweeneys intervened and filed the notice to which reference has been made. Upon these facts, we think the appellant's contention is sound, that in law a defendant is justified in asking that a third party be interpleaded only when at the time of the commencement of the action there are diverse claimants, each demanding of him, to the exclusion of the other, the same fund, and that it would be a hazard for him to determine which one of the claimants is entitled to the fund, and the then situation of the stakeholder and the condition are brought about without defendant's act or connivance. Upon the motion no attempt was made to show that the company, at the time when the policy was payable, or at the time when the action was commenced, had any knowledge or notice of the claim which was subsequently made by the Sweeneys. At neither time was the company in a position to bring an action of interpleader and vouch in the plaintiff and the Sweeneys as parties defendants, because at such times there was but one person, namely, the plaintiff, legally entitled to the moneys under the policy. Or, to express it differently, the company would have incurred no legal hazard or liability to the Sweeneys, had it paid the plaintiff prior to April 15, 1903; and whatever hazard there was thereafter resulted from the company's own act in withholding, without justification, payment from plaintiff. We think it would be permitting the company to profit by its own neglect and wrong to accord the relief which has been granted, and to substitute as a defendant one who, it is asserted (and nothing to the contrary appears), is an irresponsible person, unable to pay the costs of the action if the plaintiff were finally successful.

We think the order must be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.